Filed 2/6/24  Bracewell v. State Dept. of Public Health CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| KEITH BRACEWELL, Plaintiff and Appellant, v. STATE DEPARTMENT OF PUBLIC HEALTH et al., Defendants and Respondents. | C097453 (Super. Ct. No. 34-2021-00305066-CU-BC-GDS) |

In a prior appeal, we ruled against claims alleged by plaintiff and appellant Keith Bracewell and his wife in a petition for writ of mandate concerning the disqualification of their food stores from participating in a federal program to provide supplemental food for women and children.  In this action, Bracewell alleges contract and negligence causes of action that are based on the same facts and issues which we and the trial court resolved in the prior action.  Although he contends the doctrine of claim preclusion should not apply due to extrinsic fraud committed on the courts by the defendants, we find the argument to

1

be without merit. We thus affirm the trial court's judgment of dismissal following a demurrer on the basis of claim preclusion.

## FACTS AND HISTORY OF THE PROCEEDINGS

Much of this discussion is taken from our unpublished opinion in the earlier action, *Bracewell v. California Dept. of Public Health* (Oct. 29, 2019, C083492) [nonpub. opn.] [2019 Cal.App.Unpub.LEXIS 7200] (*Bracewell I*).

The Special Supplemental Nutrition Program for Women, Infants and Children (the WIC program) provides supplemental nutrition to pregnant and postpartum mothers and their children up to the age of five. "Congress enacted the federal Child Nutrition Act of 1966 (42 U.S.C. § 1771 et seq.), which established the WIC program. (42 U.S.C. § 1786.) [Defendant and respondent Department of Public Health] (Department) administers the program in this State in accordance with federal WIC requirements and guidelines. (Health & Saf. Code, §§ 20, 123280.) The Department contracts with retail food vendors to provide supplemental food under the program. (Health & Saf. Code, § 123310.) Vouchers or food instruments issued to eligible program participants are redeemed for WIC-approved food products at authorized food vendors, and the vendors submit the vouchers to the State for reimbursement. Only authorized food vendors may accept WIC food vouchers. (Cal. Code Regs., tit. 22, § 40735, subd. (a).) Each retail outlet location must be authorized separately under the program. (Cal. Code Regs., tit. 22, § 40735, subd. (a).) In addition, authorized vendors must comply with the Department's 'rules of vendor authorization, reimbursement, and monitoring that control program food costs, maximize participant access, and ensure program integrity.' (Health & Saf. Code, § 123315, subd. (a)(8).)

"The Bracewells owned and operated two food stores, Basic Foods and Basic Foods #3, in Bakersfield. The stores were approved food vendors participating in the WIC program.

2

"A food vendor must execute a vendor agreement with the Department to be entitled to reimbursement for food vouchers.  (Cal. Code Regs., tit. 22, §§ 40735, subd. (a), 40739; 7 C.F.R. § 246.12, subd. (h)(1).)  In 2006, the Bracewells entered into a vendor agreement with the predecessor to the Department.  Pursuant to that agreement, the Bracewells agreed to comply with all federal and state laws, regulations and rules governing the WIC program.  Consistent with state law, the agreement required 'the food vendor' to '[m]aintain, for a period of three years, records including but not limited to: all inventory records necessary for Federal and State tax reporting purposes, inventory records showing all wholesale and retail purchases; invoices identifying the quantity and prices of specific supplemental foods; sales and use tax returns, and books of account and other pertinent records that are necessary to substantiate the volume and prices charged through food instrument redemption.'  (See Health & Saf. Code, § 123315, subd. (a)(6); Cal. Code Regs., tit. 22, § 40735, subd. (a).)  The agreement further provided that the State reserved the right to audit a food vendor's records and books of account for compliance with the agreement and to disqualify the food vendor from participation in the program if it is determined that the vendor failed to comply with the agreement or has committed violations subject to disqualification under 7 Code of Federal Regulations part 246 and California Code of Regulations, title 22, section 40740.  Although they were included in one vendor agreement, Basic Foods and Basic Foods #3 each had its own vendor identification number.  Moreover, the vendor agreement provided that each store location was authorized separately.

"In 2008, the State Controller's Office audited the records of Basic Foods and Basic Foods #3 for the period January 1, 2006 to December 31, 2006.  The Department issued separate notices of audit findings and disqualification to Basic Foods and Basic Foods #3, finding each store had been reimbursed in excess of eligible costs by more than 20 percent of the total food voucher dollars redeemed.  The stores were disqualified from the program for three years pursuant to 7 Code of Federal Regulation section 246.12,

3

subdivision (*l*)(1)(iii)(B) and California Code of Regulations, title 22, section 40740, subdivision (e)(2)(C) [(section 40740(e)(2))]. The Bracewells were required to repay $125,099 for Basic Foods and $136,357 for Basic Foods #3.

"The Bracewells filed separate appeals for each store and requested a hearing. Administrative Law Judge (ALJ) Dwight Nelsen heard the matter and issued a proposed decision denying the appeals. The Bracewells argued the two stores should be treated as a single unit for auditing purposes because they were treated as one entity for federal tax purposes, but the ALJ rejected the argument. He said the vendors' participation in the program was based on contract and the vendor agreement provided that each store was authorized separately, and the auditor followed applicable procedures which required that each store be audited separately. He concluded that combining the two stores as one was inconsistent with accepted auditing standards and procedures of WIC stores and the vendors' operations.

"With respect to the inventory each store had for sale during the audit period, ALJ Nelsen said there should be a paper trail substantiating the amount and value of the food products each store received for sale to WIC beneficiaries. However, each store did not have a contemporaneous paper trail to verify what it received from the other store in the form of transfers of food products. He found that the vendor's records for Basic Foods showed that the volume of WIC food sales for five food items was unsupported in the amount of $125,099, and the vendor's records for Basic Foods #3 showed that the volume of WIC food sales for 24 food items was unsupported in the amount of $136,357.

"The ALJ also rejected the Bracewells' argument that they were not informed of the need for maintaining transfer records. He said it was reasonable to expect each store to be able to show 'auditable documentation [of] the volume and value of the products it had for sale.' And the need for documentation of transferred food products should be the same as for products from outside wholesalers. The ALJ concluded that disqualification was appropriate because the audit of each store showed the vendor was reimbursed in an

4

amount in excess of eligible costs. The Department adopted the ALJ's proposed decision.

"The Bracewells filed a petition for reconsideration, which was denied. The Bracewells then filed a petition for writ of mandate in the superior court to compel [the ALJs and the Department] to vacate the Department's final decision and to issue a new decision granting their appeals. The trial court granted the writ petition in part and denied it in part. While the trial court agreed that the Bracewells were required to maintain records reflecting transfers of goods between the two stores as part of the WIC program's recordkeeping requirements, it said the evidence presented indicated there may not have been an over-reimbursement when transfers between the two stores were taken into consideration. The trial court issued a peremptory writ, remanding the matter for reconsideration as to the amount the Bracewells were required to repay the Department. The trial court denied the Bracewells' motion for reconsideration.

"On November 9, 2011, the trial court entered judgment and Keith Bracewell filed notice of entry of judgment. About five weeks later, the Bracewells filed a writ petition in this Court, which this Court denied because the Bracewells had a remedy by appeal. The Bracewells did not file a timely notice of appeal concerning the November 9, 2011 judgment.

"On remand, the Department vacated its decision. ALJ Mark Otto ultimately submitted a proposed decision concluding that the vendors must reimburse the Department $11,231; certified public accountant Denny Bridges concluded the combined net unsupported redemption amount for the two stores was $11,231, and the Department did not present evidence of the monetary loss it suffered and did not dispute the amounts Mr. Bridges used in his calculations. The Department adopted the ALJ's proposed decision and issued its final decision.

"The trial court did not discharge the peremptory writ. [In November 2015, the court found that the ALJ's decision requiring reimbursement of $11,231 was supported

5

by substantial evidence. However, the court] agreed with the Bracewells that, if the Bracewells owed only $11,231 and not $261,456, ALJ Otto needed to determine whether the disqualification should be modified. [The Bracewells did not appeal this decision. (*Bracewell I, supra*, 2019 Cal.App.Unpub.LEXIS 7200.)] On remand, ALJ Otto declined to modify the disqualification, and the Department adopted the decision. Although the Bracewells asserted further objections in the trial court, the trial court overruled the objections, discharged the peremptory writ and dismissed the matter on September 21, 2016. The Department filed a notice of entry of that order and the Bracewells filed a notice of appeal within 60 days thereafter." (*Bracewell I, supra,* 2019 Cal.App.Unpub.LEXIS 7200.)

In the appeal, the Bracewells contended (1) the two stores should not have been audited as separate vendors or required to maintain records showing inter-store transfers of food products; (2) it was improper to disqualify the stores; and (3) there was insufficient evidence that the stores were reimbursed in excess of eligible costs by $11,231. (*Bracewell I, supra,* 2019 Cal.App.Unpub.LEXIS 7200.)

This Court disagreed with the Bracewells and affirmed the trial court's 2016 order. We concluded (1) the challenge to the separate audits and transfer records requirement was barred because the Bracewells did not timely appeal the 2011 judgment; (2) the decision to disqualify the stores was not erroneous; and (3) the challenge to the sufficiency of the evidence was barred by the failure to timely appeal the November 2015 order. (*Bracewell I, supra,* 2019 Cal.App.Unpub.LEXIS 7200.) The California Supreme Court denied the Bracewells' petition for review on January 15, 2020.

On March 11, 2020, the Bracewells filed a complaint in superior court against the Department and the Controller's Office (collectively the Departments). The Departments filed a demurrer, contending among other arguments that the Bracewells had not filed a claim with the Departments as required by the Government Claims Act (Gov. Code, § 911.2).

6

The Bracewells dismissed the action on September 28, 2020. Then, on December 21, 2020, they presented the Departments with a government claim.

On July 29, 2021, the Bracewells filed this action against the Departments. The trial court sustained the Departments' demurrer with leave to amend, finding the Bracewells did not file their government claim timely.

The Bracewells filed a first amended complaint on March 30, 2022. In the complaint, they allege causes of action for breach of contract, negligence, and negligent interference with economic advantage. They contend the Departments breached the vendor agreement on September 30, 2008, by (1) disqualifying them as WIC vendors and banning their participation in the WIC program for three years; (2) requiring transfer documents and auditing their stores separately and incompletely in violation of accepted tax auditing practices; and (3) incorrectly determining that Basic Foods #3 had been reimbursed excessively.

For their negligence claim, the Bracewells contend that on or about September 30, 2008, (1) the Departments negligently interpreted the vendor agreement; (2) the Departments should have known that the audit was not performed according to accepted state and federal tax auditing standards; (3) neither store was in violation of state regulations; (4) the Departments knew that the initial overpayment assessment of more than $261,000 was based on improper auditing practices; and (5) the Departments knew that the Bracewells had not actually received any payments in excess of food instrument redemption and had not benefited financially from any program fraud.

In their claim for negligent interference with economic advantage, the Bracewells contend (1) the auditor performed the audit incorrectly; and (2) after determining the amount actually owed was $11,231, the Department misrepresented the grounds for a three-year disqualification. The Bracewells further allege that the Department wrongfully withheld from the courts a document entitled Initial Statement of Reasons, which listed the documents required for the audit under section 40740(e)(2) and the

7

reasons for a three-year disqualification. The document purportedly shows that the audit was not properly performed and the Bracewells did not qualify for a three-year disqualification. The Bracewells allege that had this document been disclosed to the courts during the prior litigation, they would have won their appeal.

The Departments filed a demurrer to the first amended complaint. They contended (1) the Bracewells' claims were barred by res judicata and issue preclusion; (2) the Departments were statutorily immune from the Bracewells' claims; and (3) the complaint was barred due to the Bracewells' failure to timely present a government claim.

The Bracewells opposed the demurrer. They argued that their government claim and the action were timely filed under application of the doctrine of equitable tolling. They also argued that the Departments were not immune, and the action was not barred by the prior litigation.

The trial court sustained the Departments' demurrer without leave to amend based on the untimeliness of the Bracewells' government claim. The court explained that *Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1120-1123, established that equitable tolling does not apply to the government claim presentation deadline, and the court was bound to follow *Willis*.

## DISCUSSION

Because we may affirm a judgment of dismissal after a demurrer has been sustained without leave to amend on any ground stated in the demurrer, even if the trial court did not rule on that ground (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324), we address a different ground raised in the demurrer and not addressed by the trial court that is dispositive.

The Bracewells in their opening brief contend that res judicata, now commonly referred to as claim preclusion, should not bar this action. The doctrine of claim

8

preclusion bars claims that were, or should have been, advanced in a previous suit involving the same parties or parties in privity with them. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) The doctrine applies if the second suit involves the same primary right between the same parties that was adjudicated to a final judgment on the merits in the first suit. (*Ibid*.) Claim preclusion may potentially not apply if the prior judgment was obtained by extrinsic fraud. (7 Witkin, Cal. Procedure (6th ed. 2023) Judgement, § 370.)

The Bracewells argue that claim preclusion does not apply because the Departments fraudulently concealed a document from the courts that would have changed the result of the prior judgments, and the Bracewells did not delay in bringing this action upon discovering the fraud. The Departments contend there was no fraud and that claim preclusion bars this action.

The Bracewells assert that the Departments fraudulently concealed from the courts a document entitled "40740 Initial Statement of Reasons." This document purportedly reveals the true purpose and meaning of section 40740(e)(2), the regulation under which the Bracewells were disqualified from the WIC program. That regulation requires a food vendor be disqualified for three years from the WIC program if an audit identifies a pattern of the vendor claiming reimbursement for the sale of supplemental food which exceeds the vendor's inventory purchase documentation for a specific period of time.

The Bracewells attached portions of the Initial Statement of Reasons dated April 12, 2001, to their first amended complaint. They claim the Initial Statement of Reasons exposes that the Departments violated the Bracewells' due process rights by imposing disqualification grounds and auditing requirements that do not exist in the actual regulation, section 40740(e)(2). The Bracewells contend that had the statement been disclosed to the courts in the earlier litigation, they would have won their appeal.

To be liable for fraudulent concealment, the defendant must have concealed or suppressed a material fact when under a duty to disclose that fact to the plaintiff. (*Nissan*

9

*Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 826.) The Bracewells do not allege facts showing the Departments were under a legal duty to disclose the Initial Statement of Reasons to them. Indeed, that document was already a public document.

When a state government agency engages in administrative rulemaking, it must prepare and make available to the public an initial statement of reasons for its proposed regulatory action. (Gov. Code, § 11346.2, subd. (b).) In general, the initial statement of reasons must describe the proposed regulation's purposes and benefits, assess its potential economic impacts, and discuss reasonable alternatives. (Gov. Code, § 11346.2, subd. (b).)

The agency must include the initial statement of reasons in its notice package submitted to the Office of Administrative Law to initiate the approval process. (Gov. Code, § 11346.2, subd. (b).) The statement is not published in the Notice Register, but the agency must post the statement on its website. (Gov. Code, § 11340.85, subd. (c)(2).) The agency must also make the statement available to the public upon request. (Gov. Code, § 11346.2, subd. (b).)

Without evidence to the contrary, we presume a government agency has complied with its statutory obligations. (*Mateel Environmental Justice Foundation v. Office of Environmental Health Hazard Assessment* (2018) 24 Cal.App.5th 220, 239; Evid. Code, § 664.) Thus, the Department posted the Initial Statement of Reasons on its website on or around the date of the statement's release, April 12, 2001, and has made it available to the public upon request. The Department was under no further duty to "disclose" the statement to the Bracewells or the courts.

Because the Bracewells' allegations concerning the Initial Statement of Reasons do not successfully plead fraudulent concealment, the doctrine of claim preclusion applies and bars this action from proceeding. This action involves the same cause of action, or primary right, that was litigated in the prior action to a final judgment by the

10

same parties or those in privity with the parties. Both actions arise from the alleged harm resulting from the disqualification of the Bracewells' stores from the WIC program.

Although the first amended complaint in this matter alleges breach of contract and negligence, those causes of action are based on the same allegations of wrongdoing resolved in the first action: whether the two stores were properly audited as separate vendors; whether the stores complied with state and federal requirements to maintain transfer records and whether such requirements existed; whether the Bracewells received and were required to repay the assessed overpayment; and whether disqualification was a proper remedy. The first action resolved each of these issues on the merits, and that matter is now final. Claim preclusion prevents the Bracewells from relitigating those issues in this action under any theory.

The Bracewells contend they raise issues and arguments in this action that the prior action did not consider. They assert the prior action did not address: whether the Department interpreted and enforced section 40740(e)(2) inconsistently with the Initial Statement of Reasons; whether the three-year disqualification was authorized when it was not imposed to punish and prevent fraud; whether Basic Foods #3 was not reimbursed in excess of expenditures; whether unsold inventories reduced the excess reimbursement to zero; and whether tax records were used in the audit as required.

Those arguments are all based on the manner in which the Department performed the audit and the Department's interpretation and enforcement of section 40740(e)(2), both of which were at issue in the first action. A prior judgment is res judicata on matters that were litigated, or could have been litigated, in that action. (*Warga v. Cooper* (1996) 44 Cal.App.4th 371, 377-378.) "If the matter was within the scope of the [prior] action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 202.) The Bracewells' "additional" arguments were all within the scope of the prior action. And because the

11

Initial Statement of Reasons was a public document at the time of the first action, any arguments the Bracewells raise in this matter based on that statement could have been raised in the prior action.  Claim preclusion thus bars the first amended complaint.

Because this issue is dispositive, we need not address the parties' other arguments.

DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to the Departments.  (Cal. Rules of Court, rule 8.278(a).)

 

 

       _____
        HULL, Acting P. J.

 

We concur:

 

_____
RENNER, J.

 

_____
ASHWORTH, J.*

---

\* Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.